**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jose M. SALAZAR, Defendant–Appellant.**

No. 94CA0447.

Colorado Court of Appeals, Div. II.

April 4, 1996.

Rehearing Denied May 16, 1996.

Gale A. Norton, Attorney General, Raymond T. Slaughter, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Sandra K. Mills, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Julie Iskenderian, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge HUME.

Defendant, Jose M. Salazar, appeals the judgment of conviction entered upon jury verdicts finding him guilty of sexual assault on a child and harboring a runaway child. We affirm.

Defendant and the victim met in the summer of 1992. At the time, the victim told defendant that she was 17 years old although she was, in fact, 11.

In March 1993, the victim ran away from home and stayed with defendant at his parents' house. During the time she was living with defendant, his cousin showed him a poster containing photographs of the victim and the information that she was 11 years old. Upon being confronted by defendant, the victim continued to represent to him that she was 17. At no time did he attempt to contact the victim's family.

At trial on the above charges, defendant did not deny the above events, nor did he deny having sexual relations with the victim. However, he sought unsuccessfully to present evidence that the victim had claimed to be 17 or 18 and to argue that the victim had deceived him about her age. Besides barring such evidence and argument, the trial court further refused to instruct the jury that the mental state, "knowingly" in § 18–3–405(1), C.R.S. (1986 Repl.Vol. 8B), applied to the age of the child, and so informed the jurors, in response to their query during deliberations. The jury returned guilty verdicts on both charges.

## I.

A principal contention of defendant is that the trial court erroneously relieved the prosecution of its burden of proof by applying § 18–3–406(2), C.R.S. (1986 Repl.Vol. 8B) so as to preclude him from presenting evidence that he reasonably believed the victim to be older than 15 in order to negate the culpable mental state of "knowingly" required by § 18–3–405(1) and by instructing the jury to apply the "knowingly" element only to defendant's conduct. In addition, he contends that § 18–3–406(2), as applied to him, violated his right to due process by arbitrarily precluding him from presenting an effective defense. We reject both contentions.

Section 18–1–503(4), C.R.S. (1986 Repl.Vol. 8B) provides that if a statute defining an offense prescribes a specified culpable mental state, then that mental state applies to every element of the offense unless "an intent to limit its application clearly appears."

Section 18–3–405(1) provides:

Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

And § 18–3–406(2) further provides:

If the criminality of conduct depends upon a child being below the age of fifteen, it shall be no defense that the defendant did not know the child's age or that he reasonably believed the child to be fifteen years of age or older.

The power to define criminal conduct and establish the legal components of criminal liability is vested with the General Assembly. Colo. Const. art. V, § 1; see Hendershott v. People, 653 P.2d 385 (Colo. 1982). Although due process requires the prosecution to prove every element of an offense, including the mens rea, beyond a reasonable doubt, the General Assembly also has the prerogative to formulate and limit affirmative defenses. Rowe v. People, 856 P.2d 486 (Colo.1993).

The purpose underlying the crime of statutory rape under the common law was to protect the morals of children from the consequences of acts that they were not able to comprehend. See Gibbs v. People, 36 Colo. 452, 85 P. 425 (1906).

In addition, the legislative history relating to the adoption of §§ 18–3–405(1) and 18–3–406(2) demonstrates that the General Assembly intended this offense to be a strict liability offense. It specifically considered and rejected a provision that would have allowed the defense of "reasonable mistake of age" if the crime depended on the child being less than 16 years of age or if the crime depended on the child being below a critical age other than 16 if the defendant reasonably believed the child was older than that critical age. See Hearings on H.B. 1042 before the House Judiciary Committee, 50th General Assembly, First Session (February 27, 1975). See also People v. Bath, 890 P.2d 269 (Colo.App.1994)(enactment of § 18–3–406(2) demonstrates General Assembly's desire and ability to limit an affirmative defense and create a strict liability crime); People v. Suazo, 867 P.2d 161 (Colo.App.1993)(offenses

falling within § 18–3–406(2) are strict liability offenses).

Hence, by its application of § 18–3–406(2), the trial court here did not relieve the prosecution of its burden to prove essential elements of the offense charged. Nor did the court violate defendant's due process rights by precluding him from presenting a defense of "reasonable mistake of age" and instructing the jury to apply "knowingly" only to his conduct.

## II.

Defendant next contends that the trial court erred in allowing the prosecution to recall a witness after she had finished her testimony and had spoken to the victim's sister who had been in the courtroom when the witness testified. Defendant argues that such conversation violated the court's sequestration order. We disagree.

A trial court has broad discretion in determining whether there has been a violation of a sequestration order and in deciding the penalties or sanctions to be imposed for such violation. *People v. P.R.G.*, 729 P.2d 380 (Colo.App.1986).

In deciding whether to impose sanctions for violation of a sequestration order, a trial court must consider three factors: (1) the involvement of a party or counsel for a party in the alleged violation; (2) the witness' actions and state of mind concerning the violation and whether the violation was inadvertent or deliberate; and (3) the subject matter of the violation in conjunction with the substance of the witness' testimony. *People v. P.R.G., supra.*

Here, in permitting the witness to be recalled, the court noted that the victim's sister was not endorsed as a witness, and her presence during presentation of evidence did not violate the sequestration order. Although the court indicated its belief that allowing the witness to be recalled might "violate the spirit of the process," it did not find that the sequestration order had been violated. The witness had finished her testimony and, as the trial court found, may not have felt further constrained by the seques-

tration order. The prosecutor had no involvement in the conversation between the two women. Additionally, the court found that the witness' credibility in changing her story could be explored adequately through cross-examination, and that the jury could decide which version of events it chose to believe.

In light of these circumstances, we conclude that the trial court did not abuse its discretion in allowing the witness to be recalled. *See People v. Johnson,* 757 P.2d 1098 (Colo.App.1988)(inaccuracies in testimony of witness who violated sequestration order brought out in impeachment during cross-examination not prejudicial to defendant).

## III.

Defendant also contends that the trial court erred in admitting hearsay statements to bolster the testimony of the recalled witness. We do not agree.

According to CRE 801(d)(1)(B), a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination, the statement offered is consistent with the declarant's testimony, and it is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *People v. Andrews,* 729 P.2d 997 (Colo.App.1986). This rule encompasses only those statements made prior to the opportunity or motive to fabricate statements. *People v. Segura,* ─── P.2d ─── (Colo.App. No. 94CA0565, December 21, 1995).

Here, statements that the recalled witness had made to an investigating officer were offered to rebut an implied charge that she had fabricated her testimony. Defendant, while cross-examining the officer, had attempted to show that the recalled witness had not made any of the statements she had testified to in court, thus implying that she had fabricated her testimony upon being recalled. The statements at issue were made prior to the witness' initial interrogation at trial and before she had any opportunity or motive to fabricate her testimony. Hence, they meet the criteria of CRE 801(d)(1)(B)

and were properly admitted by the trial court.

## IV.

Defendant further contends that the trial court erred in denying his motion for a mistrial after one witness incorrectly mentioned that defendant had been in jail and another witness made statements from which it was possible to infer that defendant had been a participant in a domestic assault involving the victim. We are not persuaded.

■ A mistrial is the most drastic remedy and is to be granted only when the prejudice incurred is too substantial to be remedied by other means. *People v. Collins,* 730 P.2d 293 (Colo.1986). *See People v. Lowe,* 184 Colo. 182, 519 P.2d 344 (1974)(reference to defendant being in jail not detailed enough to be prejudicial and a reference to incarceration is not *per se* prejudicial).

■ Here, the first witness made a passing reference to having heard that the defendant had recently been released from prison. The court admonished her not to repeat things other people had told her and the issue was not mentioned again.

The second witness, although mentioning an earlier domestic incident four times during her testimony, did not refer to any details of the incident or name defendant as an actor in it. Further, the victim had previously testified that she had been involved in a dispute with defendant's ex-girlfriend at his house, and that incident was already part of the jury's knowledge.

The trial court, in chambers, specifically admonished the second witness not to mention the incident again. And, although the prosecutor had not previously told her to refrain from any mention of the incident, he had told her that she was only to talk about her contact with defendant and the victim. In neither instance did the prosecutor deliberately attempt to bring out the improper statements. In our view, none of the statements, considered singly or taken together, was of such magnitude as to require a mistrial. This is especially true in light of the overwhelming evidence of defendant's guilt. *See People v. Jackson,* 627 P.2d 741 (Colo.

1981). Thus, we conclude that the trial court did not err in denying defendant's motion for a mistrial.

## V.

■ Lastly, defendant contends that the trial court improperly instructed the jury on the elements of harboring a runaway child under § 18–6–601(1)(b), C.R.S. (1986 Repl. Vol. 8B), by defining "child" as a person less than 18 years of age. He argues that the court should not have relied on the Children's Code, § 19–1–101, et seq., C.R.S. (1986 Repl.Vol. 8B) to define "child" because it and the criminal code serve different purposes. This argument is without merit.

■ A trial court has a duty to instruct a jury properly concerning each element of an offense. *People v. Atkins,* 885 P.2d 243 (Colo.App.1994).

■ The appropriate standard when an objection to a jury instruction is raised is whether a trial court erred in giving the instruction and, if so, whether the error affected the substantial rights of a defendant or if such error might be deemed harmless. *Lybarger v. People,* 807 P.2d 570 (Colo.1991).

The Children's Code and the criminal statutes directed towards crimes against children both serve the General Assembly's intent of protecting children. *See People v. Lybarger,* 790 P.2d 855 (Colo.App.1989), *rev'd on other grounds,* 807 P.2d 570 (Colo.1991)(fact that criminal code provides for criminal sanctions does not negate legislative intent to protect children).

Here, the trial court reasoned that, for purposes of § 18–6–601(1)(b), the term "runaway child" is consistent with § 19–1–103(4), C.R.S. (1995 Cum.Supp.), defining a child as a person under 18 years of age and with § 19–3–102(1)(f), C.R.S. (1995 Cum.Supp.), which defines a dependent or neglected child as a child who has run away from home.

Further, § 18–6–601(1)(b) expressly defines "runaway child" as an unmarried "minor" who has run away from home or is otherwise beyond parental control. Our review of the criminal statutes shows that "mi-

nor" is consistently defined as a person under the age of 18. *See* § 18–6–701(1), C.R.S. (1995 Cum.Supp.)(for purposes of contributing to delinquency of a minor, "child" means a person under the age of 18); § 18–7–101(1.5), C.R.S. (1995 Cum.Supp.)(definition of minor for obscenity offenses means person under 18 years of age); § 18–7–601(2), C.R.S. (1995 Cum.Supp.)(for offense of dispensing violent films to minors, minor means any person under 18 years of age); § 18–13–121, C.R.S. (1995 Cum.Supp.)(person who knowingly furnishes tobacco products to any person under age 18 commits offense of furnishing tobacco products to minors).

Hence, we conclude that the trial court did not err in defining the term "child" or in instructing the jury concerning the elements of the offense of harboring a runaway child.

The judgment is affirmed.

DAVIDSON and QUINN*, JJ., concur.