FILED
**United States Court of Appeals**
**Tenth Circuit**

**October 9, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

GERALD SANDOVAL,

        Defendant - Appellant.

No. 11-1303

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:10-CR-00470-WYD-1)**

---

John T. Carlson, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender with him on the brief) Denver, Colorado, for Defendant – Appellant.

Michael Conrad Johnson, Assistant U.S. Attorney (John F. Walsh, U.S. Attorney and Patricia Davies, Assistant U.S. Attorney with him on the brief) Denver, Colorado, for Plaintiff – Appellee.

---

Before **KELLY**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

        This is another of those cases, now becoming legion,[1] where we must decide if a

prior conviction constitutes a violent felony under the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e). Gerald Sandoval pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, he admitted to several previous felony convictions, two of which, he also admits, are violent felonies as defined by the ACCA. But he claims neither of the two remaining previous felonies considered by the court, first-degree criminal trespass and second-degree assault, are violent. Because either conviction could serve as the third "violent felony" triggering a 15-year mandatory minimum sentence under the ACCA, we address only one and conclude his conviction of second degree assault, even though mitigated by heat of passion, is a violent crime for the purposes of the ACCA.[2]

---

[1] Since the Supreme Court decided *Sykes v. United States*, -- U.S.--, 131 S. Ct. 2267, 2270 (2011), a bit more than one year ago, there have been numerous reported appellate cases construing a violent crime under the ACCA. The law is not well-settled. As Justice Scalia commented in a dissent from the denial of certiorari:

> If it is uncertain how this Court will apply *Sykes* and the rest of our ACCA cases going forward, it is even more uncertain how our lower-court colleagues will deal with them. Conceivably, they will simply throw the opinions into the air in frustration, and give free rein to their own feelings as to what offenses should be considered crimes of violence—which, to tell the truth, seems to be what we have done. (Before throwing the opinions into the air, however, they should check whether littering—or littering in a purposeful, violent, and aggressive fashion—is a felony in their jurisdiction. If so, it may be a violent felony under ACCA; or perhaps not.)

*Derby v. United States*, -- U.S.--, 131 S. Ct. 2858, 2859-60 (2011) (Scalia, J., dissenting).

[2] We defer discussion of first-degree criminal trespass to another day.

## DISCUSSION

It is a federal crime for a convicted felon to unlawfully possess a firearm. 18 U.S.C. § 922(g)(1). Ordinarily, the maximum sentence for that crime is 10 years of imprisonment. 18 U.S.C. § 924(a)(2). "If, however, when the unlawful possession occurred, the felon had three previous convictions for a violent felony or serious drug offense, the punishment is increased to a minimum term of 15 years." *Sykes v. United States*, -- U.S.--, 131 S. Ct. 2267, 2270 (2011) (citing 18 U.S.C. § 924(e)). Sandoval claims his conviction for second-degree, heat-of-passion assault (a violation of Colo. Rev. Stat. § 18-3-203(2)), is not a violent felony.

The ACCA defines a "violent felony" as:

any crime punishable by imprisonment for a term exceeding one year . . . that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

Whether a prior conviction qualifies as a "crime of violence" is a legal question we review de novo. *United States v. McConnell*, 605 F.3d 822, 824 (10th Cir. 2010), *cert, denied*, 131 S. Ct. 3021 (2011).[3] To determine whether a prior conviction is a crime

---

[3] *McConnell* construed the "crime of violence" language in the Guidelines. "Because of th[e] commonality of language in the residual clauses of the ACCA and

of violence, we must take "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States,* 495 U.S. 575, 600 (1990).[4]

In Colorado, second-degree assault may be committed in several different ways. Sandoval pled guilty to violating § 18-3-203(1)(b), which provides: "A person commits the crime of assault in the second degree if . . . [w]ith intent to cause bodily injury to another person, he or she causes such injury to any person by means of a deadly weapon . . . ." The statute, however, contains a mitigating provision, § 18-3-203(2)(a)(1996), which applied in Sandoval's case. At the time of the plea the provision stated:

> If assault in the second degree is committed under circumstances where the act causing the injury is performed, not after deliberation, upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person causing the injury sufficiently to

---

USSG § 4B1.2(a), we have consistently interpreted them identically." *United States v. Thomas*, 643 F.3d 802, 805 (10th Cir. 2011).

[4] If "the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute 'to certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto, and findings by the [sentencing] court.'" *United States v. Dwyer,* 245 F.3d 1168, 1171 (10th Cir. 2001) (quoting *United States v. Zamora,* 222 F.3d 756, 764 (10th Cir. 2000)). Known as a modified categorical approach, we limit our inquiry to "(1) an examination of the language of the statute under which [Sandoval] was convicted, (2) the charging document or court records of comparable reliability, and (3) any admissions (including those within the plea agreement) [Sandoval] made regarding the facts of his prior convictions." *United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005). The record in this case contains no such documents.

excite an irresistible passion in a reasonable person, it is a class 6 felony.[5] The district judge decided Sandoval's second-degree assault conviction, even if committed upon provocation and in the heat-of-passion, was a violent crime under the residual clause of § 924(e)(2)(B)(ii) ("or otherwise involves conduct that presents a serious potential risk of physical injury to another").[6] He is correct.

When evaluating whether a specific statute is a crime of violence under § 924(e)(2)(B)(ii)'s residual clause, we do not inquire "'into the specific conduct of this particular offender.'" *Sykes*, 131 S. Ct. at 2272 (quoting *James v. United States,* 550 U.S. 192, 202 (2007)). "[Sandoval] freely admits that heat-of-passion assault does not just pose a serious risk of injury to another, it actually requires an injury to another, and with a deadly weapon . . . ." (Appellant's Reply Br. at 7-8.) He argues, however, because a

---

[5] In 1997, the legislature changed § 18-3-203(2)(a)'s language to read:

> If assault in the second degree is committed under circumstances where the act causing the injury is performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person causing the injury sufficiently to excite an irresistible passion in a reasonable person, and without an interval between the provocation and the injury sufficient for the voice of reason and humanity to be heard, it is a class 6 felony.

The legislature removed the phrase "not after deliberation" and added the language requiring the absence of an interval between the provocation and the act.

[6] Although the government originally maintained Sandoval's crime qualified under both 18 U.S.C. § 924(e)(2)(B)(i) and (ii), it limited its argument to the residual clause prior to oral argument. Therefore, the only question is whether Sandoval's heat-of-passion, second-degree assault conviction is a crime of violence under the residual clause found in § 924(e)(2)(B)(ii).

heat-of-passion violation involves, by definition, a lack of deliberation and, in addition, the defendant's acts must result from provocation by the victim "sufficient[] to excite an irresistible passion in a reasonable person," his offense does not reflect the purposeful and aggressive conduct contemplated by *Begay v. United States*, 553 U.S. 137 (2008).

In *Begay*, the Supreme Court decided a state conviction for driving under the influence of alcohol (DUI) was not a "violent felony" under the ACCA. The Court "assume[d] the lower courts were right in concluding that DUI involves conduct that 'presents a serious potential risk of physical injury to another.'" 553 U.S. at 141 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Nonetheless, it concluded DUI was not a "violent felony" because the examples in 18 U.S.C. § 924(e)(2)(B)(ii) "illustrate the kinds of crimes that fall within the statute's scope," and "[t]heir presence indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Id.* at 142 (quoting § 924(e)(2)(B)(ii)). Thus, to constitute a "violent felony" under the ACCA's residual clause, *Begay* requires the offense to be "roughly similar, in kind as well as in degree of risk posed, to the [statutory] examples themselves." *Id.* at 143. The Court reasoned: "DUI differs from the example crimes— burglary, arson, extortion, and crimes involving the use of explosives—in at least one pertinent, and important, respect. The listed crimes all typically involve purposeful, violent, and aggressive conduct." *Id.* at 144-45 (quotation marks omitted). Because the DUI statute did not require purposeful, violent, and aggressive conduct to sustain a conviction, it was not a violent crime under the statute.

Following *Begay*, our residual clause analysis involved a two-part inquiry: (1) "whether the offense presents a serious potential risk of physical injury to another" and (2) whether "the offense is roughly similar, in kind as well as degree of risk posed, to the enumerated crimes," i.e., whether it was purposeful, violent, and aggressive. *McConnell,* 605 F.3d 826-27 (quotation marks omitted). It is the second question Sandoval contends we must answer in the negative. He argues his crime is not similar in kind to the enumerated crimes because those offenses require deliberation and cannot be mitigated by heat of passion. According to Sandoval, his crime involved no deliberation, thus making it akin to a crime committed recklessly, not intentionally or purposefully. And under our cases following *Begay*, "reckless" conduct is not considered a "crime of violence" even if there is a serious risk of physical injury. *See, e.g., United States v. Armijo*, 651 F.3d 1236, 1237 (10th Cir. 2011).

His argument is unpersuasive for several reasons. First, the Supreme Court's decision in *Sykes* limited the application of *Begay's* inquiry into whether the crime is "purposeful, violent, and aggressive." 131 S. Ct. at 2275. The Court stated:

> The *Begay* phrase is an addition to the statutory test. In many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulations and those that present serious potential risks of physical injury to others tend to be one and the same. As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us.
>
> *Begay* involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent and aggressive formulation was used in that case to explain the result. The felony at issue here is not a strict

- 7 -

liability, negligence, or recklessness crime and because it is, for the reasons stated and as a categorical matter, similar in risk to the listed crimes, it is a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

*Id.* at 2275-76.

After *Sykes*, it is not necessary to reach *Begay's* "purposeful" inquiry when the *mens rea* of the offense requires intentional conduct. *United States v. Smith*, 652 F.3d 1244, 1247-48 (10th Cir. 2011). "Where the felony at issue is 'not a strict liability, negligence or recklessness crime' the test is not whether the crime was 'purposeful, violent, and aggressive' but whether it is 'similar in risk to the listed crimes.'" *Smith*, 652 F.3d at 1248 (quoting *Sykes*, 131 S. Ct. at 2276); *see United States v. Perez-Jiminez*, 654 F.3d 1136, 1141 n.4 (10th Cir. 2011) (*Sykes* limited *Begay's* test to strict liability, reckless, and negligent crimes). Here, the statutory elements of second-degree, heat-of-passion assault require specific intent, *i.e.* Sandoval intended to cause bodily injury to the victim and actually caused bodily injury.[7] The intent and risk involved in his crime clearly meet the *Sykes* test.[8]

---

[7] Under Colorado law, "intentionally" or "with intent" is defined as follows:

All offenses defined in this code in which the mental culpability requirement is expressed as "intentionally" or "with intent" are declared to be specific intent offenses. A person acts "intentionally" or "with intent" when his conscious objective is to cause the specific result proscribed by the statute defining the offense. It is immaterial to the issue of specific intent whether or not the result actually occurred.

- 8 -

Colo. Rev. Stat. § 18-1-501(5). In contrast, a person acts "recklessly" "when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." *Id.* § 18-1-501(8).

[8] The Supreme Court's holding in *Sykes* is not a model of clarity. *See Sykes,* 131 S. Ct. at 2284 (Scalia, J., dissenting). However, it is clear after *Sykes,* that resort to *Begay*'s "purposeful, violent, and aggressive" test is not required in every case. The Court plainly stated that "[i]n general, levels of risk divide crimes that qualify [as predicates] from those that do not," and it ultimately held, "risk levels provide a *categorical* and manageable standard that suffices to resolve the case before us." *Id.* at 2275-76 (emphasis added). Resort to the *Begay* analysis was unnecessary in *Sykes. Id.*

Thus, objective risk or dangerousness appears to be the general measure of whether an offense is a crime of violence, especially when the offense requires intentional or knowing conduct. The fate of other considerations, such as the "purposeful, violent, and aggressive" formulation from *Begay,* is less than clear. It may be that the test is reserved for cases "akin to strict liability, negligence, and recklessness crimes." *Id.* That is how Justice Thomas reads the majority opinion. *Id.* at 2277-78 (Thomas, J., concurring) ("[T]he majority errs by implying that the 'purposeful, violent, and aggressive' test may still apply to offenses 'akin to strict liability, negligence, and recklessness crimes.'"). According to Justice Scalia the Court "now suggests" Begay's test "applies only 'to strict liability, negligence and recklessness crimes.'" *Id.* at 2285 (Scalia, J., dissenting). However, Justice Kagan expressly rejects this reading. *Id.* at 2289 n.1 (Kagan, J., dissenting) ("I understand the majority to retain the 'purposeful, violent, and aggressive' test, but to conclude that it is 'redundant' in this case . . . . I do not think the majority could mean to limit the test to 'strict liability, negligence, and recklessness crimes.'").

Even as to such "strict liability, negligence, and recklessness crimes," however, it is far from clear that the Supreme Court is still committed to the *Begay* test. The majority was deliberate in its criticism of the *Begay* test, particularly highlighting the test's lack of a "textual link" and observing that *Begay* was the Court's "sole decision" to rely on the test rather than a more general assessment of risk. *Id.* at 2275. In short, it is hard to say whether the *Begay* test survived *Sykes,* and if so, under what circumstances *Begay* continues to apply.

This is especially problematic for those Circuits, like ours, that have held crimes involving "recklessness" to be categorically outside the scope of the ACCA's residual clause even after *Sykes. See Armijo*, 651 F.3d at 1236-37 & n.14 . The future application of *Begay* seems to be open to debate, at least in this Circuit.

Even if we were to consider the mitigating clause and apply the *Begay* test, it would make no difference. Heat of passion is not an element of second-degree assault. *See People v. Sanchez*, 253 P.3d 1260, 1263 (Colo. App. 2010), *cert. denied*, 2011 WL 2175853 (D. Colo. May 16, 2011) ("[T]he statutory elements that the prosecution must prove for first or second degree assault do not include proof of the presence or absence of heat of passion."). Instead, it is "a circumstance that mitigates otherwise applicable penalties for [certain] crimes . . . ." *People v. Villarreal*, 131 P.3d 1119, 1126 (Colo. App. 2005). Even though Sandoval's crime may have been impulsive, it is no less violent and intentional. Although Sandoval may have acted without deliberation and subject to an "irresistible passion," his conduct still constituted a violent, purposeful, and aggressive felony. *See People v. Martinez*, 32 P.3d 582, 584 (Colo. App. 2001) (Colorado second-degree murder conviction is a crime of violence even if committed in the heat of passion); *United States v. Banks*, 514 F.3d 769, 780 (8th Cir. 2008) (Colorado assault in the first degree, whether in the heat of passion or not, is still a violent crime under USSG §4B1.2(a)(2)).

AFFIRMED.