FILED
United States Court of Appeals
Tenth Circuit

January 27, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

REGINALD JEROME WRAY, a/k/a
Raymond Anderson,

    Defendant - Appellant.

No. 14-1086

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 13-CR-00198-RM-1)**

---

Matthew Belcher, Assistant Federal Public Defender, (and Virginia L. Grady, Federal Public Defender, on the briefs), Denver, Colorado, for Defendant - Appellant.

Paul Farley, Assistant United States Attorney, (and John F. Walsh, United States Attorney, on the brief), Denver, Colorado, for Plaintiff - Appellee.

---

Before **KELLY**, **HARTZ**, and **MATHESON**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

    Defendant-Appellant Reginald Jerome Wray pleaded guilty to being a felon

in possession of a firearm, 18 U.S.C. § 922(g)(1), and was sentenced to 77

months' imprisonment and three years' supervised release. The issue we resolve on appeal is whether Mr. Wray's prior conviction for "Sexual Assault - 10 Years Age Difference" under Colo. Rev. Stat. § 18-3-402(1)(e) constitutes a "crime of violence" as that phrase is used in U.S.S.G. §§ 2K2.1(a)(2) and 4B1.2. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we remand for resentencing because we conclude the prior conviction does not qualify as a "crime of violence."

## Background

Mr. Wray's presentence investigation report (PSR) concluded that he had two prior felony convictions for "crime[s] of violence," U.S.S.G. § 2K2.1(a)(2), based upon two prior Colorado convictions: one for felony menacing and the other for "sexual assault - 10 years age difference." Regarding the sexual assault conviction, Colo. Rev. Stat. § 18-3-402(1)(e) provides:

> (1) Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if:
>
> * * *
>
> (e) At the time of the commission of the act, the victim is at least fifteen years of age but less than seventeen years of age and the actor is at least ten years older than the victim and is not the spouse of the victim.

Mr. Wray objected to the use of this conviction as a predicate for increasing his base offense level from 20 to 24. He argued that a violation of the statute did not

constitute a "crime of violence" in light of the Supreme Court's decision in <u>Begay v. United States</u>, 553 U.S. 137 (2008).

The district court acknowledged that the Supreme Court's decisions in <u>Begay</u> and <u>Sykes v. United States</u>, 131 S. Ct. 2267 (2011), made application of Tenth Circuit precedent to Mr. Wray's case less than straight-forward. Nevertheless, the district judge concluded that this circuit's prior decisions required him to find that the sexual assault conviction constituted a "crime of violence."

### Discussion

Our review of whether a defendant's prior conviction constitutes a crime of violence under U.S.S.G. § 4B1.2 is de novo. <u>United States v. Dennis</u>, 551 F.3d 986, 988 (10th Cir. 2008).

Under U.S.S.G. § 2K2.1(a)(2), a defendant convicted under 18 U.S.C. § 922(g) is assigned an offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." The commentary to § 2K2.1 directs us to consult the career-offender guideline, § 4B1.2, for the definition of "crime of violence." That section defines "crime of violence" as:

> [a] [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)     is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

U.S.S.G. § 4B1.2(a) (emphasis added).  Application Note 1 to § 4B1.2 further provides that "'crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, <u>forcible sex offenses</u>, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling."  (emphasis added).

Both Mr. Wray and the government agree that the sexual assault conviction does not constitute a "crime of violence" under the elements approach of § 4B1.2(a)(1).[1]  Accordingly, we consider only the government's arguments that the prior conviction (1) is a "forcible sex offense" under to Application Note 1, or (2) comes within the residual clause of § 4B1.2(a)(2) (<u>i.e.</u>, is one that "otherwise involves conduct that presents a serious potential risk of physical injury to another.").

A.     <u>The Categorical Approach and the Residual Clause</u>

The "crime of violence" definition set forth in the career-offender guideline, § 4B1.2, is virtually identical to the definition of "violent felony" contained in the Armed Career Criminal Act (ACCA).  18 U.S.C. § 924(e)(2)(B);

---

[1]  In other words, the government does not argue that Colo. Rev. Stat. § 18-3-402(1)(e) "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1).

see James v. United States, 550 U.S. 192, 206 (2007).  Thus, this court and other

federal courts of appeals have applied the Supreme Court's ACCA "violent

felony" analysis in cases interpreting § 4B1.2's definition of "crime of violence."

Dennis, 551 F.3d at 988; see also United States v. Rooks, 556 F.3d 1145, 1149–50

(10th Cir. 2009); United States v. McDonald, 592 F.3d 808, 810 (7th Cir. 2010).

Our approach, therefore, is guided by a line of Supreme Court cases interpreting

the scope of § 924(e)(2)(B).

To determine whether a prior conviction constitutes a crime of violence, we

employ a categorical approach.  United States v. Perez-Jiminez, 654 F.3d 1136,

1140 (10th Cir. 2011).  That is, "we look only to the fact of conviction and the

statutory definition of the prior offense, and do not generally consider the

particular facts disclosed by the record of conviction."  James, 550 U.S. at 202;

Begay, 553 U.S. at 141.  With regard to § 4B1.2(a)(2)'s residual clause, the

categorical approach requires us to focus on the elements of the offense and ask

whether those elements "are of the type that would justify its inclusion within the

residual provision."  James, 550 U.S. at 202.  It is not "requir[ed] that every

conceivable factual offense covered by a statute . . . necessarily present a serious

potential risk of injury."  Id. at 208.  "Rather, the proper inquiry is whether the

conduct encompassed by the elements of the offense, in the ordinary case,

presents a serious potential risk of injury to another."  Id.  Thus, in considering

Mr. Wray's sexual assault conviction, we do not look to the particular facts of the

offense, nor do we examine the most or least culpable means of violating the statute.  We ask only whether the elements of that offense are such that the commission of the crime, "in the ordinary case," presents a serious potential risk of physical injury.

Employing the categorical approach in <u>James</u>, the Court considered whether the defendant's prior conviction for attempted burglary "otherwise involv[ed] conduct that presents a serious potential risk of physical injury to another."[2] <u>James</u>, 550 U.S. at 201.  Turning to the statutory language for guidance, the Court noted that the enumerated offenses preceding the residual clause "provide one baseline from which to measure" whether certain offenses properly fall within the scope of that clause.  <u>Id.</u> at 203.  The Court employed a risk-comparison approach, comparing the risk posed by attempted burglary to the risk posed by the offense's closest analog among the enumerated offenses.  <u>Id.</u>  The Court concluded that attempted burglary is a "violent felony" under the residual clause because attempted burglary poses the "same kind of risk" as completed burglary—namely, the potential risk of "violent confrontation" between an attempted burglar and innocent bystander.  <u>Id.</u> at 204–05.  The Court emphasized

---

[2]  The attempted burglary did not qualify as a "violent felony" under the elements test of 18 U.S.C. § 924(e)(2)(B)(ii) because it did not have "as an element the use, attempted use, or threatened use of physical force against the person of another."  Nor did the attempted burglary constitute any of the enumerated offenses of § 924(e)(2)(B)(ii), including "generic" burglary.  <u>James</u>, 550 U.S. at 197 (citing <u>Taylor v. United States</u>, 495 U.S. 575, 598 (1990)).

- 6 -

that the focus of the inquiry is on <u>potential</u>, rather than actual or factual, risk.  <u>Id.</u> at 207–08.

The following year, the Supreme Court decided <u>Begay</u>, where it considered whether the defendant's felony driving under the influence (DUI) convictions were violent felonies under the ACCA's residual clause.  553 U.S at 140–41. While conceding that drunk driving indeed poses a "serious potential risk of physical injury to another," the Court nonetheless concluded that Begay's DUI offenses were not covered by the statute.  The enumeration of specific crimes in the statutory language indicated Congress' intent that the residual clause "cover[] only <u>similar</u> crimes, rather than <u>every</u> crime that 'presents a serious potential risk of physical injury to another.'"  <u>Id.</u> at 142.  Thus, the residual clause covers only those offenses "roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses.  <u>Id.</u> at 143.

With this interpretation in hand, the <u>Begay</u> Court concluded that the risk posed by drunk driving is not the same kind of risk posed by the enumerated offenses.  The enumerated crimes "all typically involve purposeful, violent, and aggressive conduct."  <u>Id.</u> at 144–45 (internal quotations omitted).  That type of conduct "makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim."  <u>Id.</u> at 145.  DUI statutes, on the other hand, do not target purposeful, violent, and aggressive conduct.  Rather, those crimes are more analogous to "crimes that impose strict liability, criminalizing conduct

in respect to which the offender need not have any criminal intent at all." Id. at 145. A prior conviction for one of these crimes, then, sheds no light on the likelihood that such person will engage in the kind of deliberate behavior "associated with violent criminal use of firearms." Id. at 147.

The most recent authority on the scope of the ACCA's residual clause is Sykes. Mr. Sykes contended that his prior conviction for vehicle flight from law enforcement was not a "violent felony" for ACCA purposes. Citing Begay, Mr. Sykes asserted that vehicle flight was outside the scope of the residual clause because it did not involve the same kind of risk posed by the offenses enumerated in § 924(e)(2)(B)(ii). Sykes, 131 S. Ct. at 2275. The Court rejected this argument.

The Court began its analysis with the risk-comparison approach of James. Analogizing vehicle flight to arson and burglary, the Court concluded that, like those crimes, "[r]isk of violence is inherent to vehicle flight." Id at 2274. And, central to this case, the Court found Mr. Sykes' reliance on Begay misplaced. Distinguishing Begay's qualitative risk analysis, the Court noted that, "[i]n general, levels of risk divide crimes that qualify from those that do not." Id. at 2275 (emphasis added). The Court explained:

> The Begay phrase is an addition to the statutory text. In many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk . . . . As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us.

> Begay involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result.

Id. at 2275–76.

Before applying the law to this case, we note the significance of the concurring and dissenting opinions in Sykes. Each of these opinions—a concurrence by Justice Thomas and dissents from Justice Scalia and Justice Kagan—acknowledges that the Court's opinion did not entirely abrogate Begay's purposeful, violent, and aggressive formulation. Id. at 2277 (Thomas, J., concurring); id. at 2289 n.1 (Kagan, J., dissenting). Rather, a proper reading of the Court's opinion "suggests [that the Begay test] applies only 'to strict liability, negligence, and recklessness crimes.'" Id. at 2285 (Scalia, J., dissenting).

B.    "Crime of Violence" Analysis – "Forcible Sex Offense" and the Residual Clause

Whether Wray was properly sentenced turns on whether his sexual assault conviction is a "crime of violence." U.S.S.G. § 4B1.2. The government argues that this conviction—in essence, a statutory rape conviction—constitutes either (1) a "forcible sex offense" under Application Note 1 to § 4B1.2, or (2) an offense falling within the residual clause of § 4B1.2. We consider these arguments not in a vacuum, but against the backdrop of prior Tenth Circuit decisions interpreting the impact of Sykes on Begay.

1.     Is the Sexual Assault Conviction a "Forcible Sex Offense"?

We begin with the government's position that a violation of Colo. Rev. Stat. § 18-3-402(1)(e) is a "forcible sex offense" that specifically qualifies as a "crime of violence" under Application Note 1 to § 4B1.2.  The government makes two arguments in support.  First, because Colorado law "presupposes the inability of a female between the ages of 15 and 17 to consent," any sexual contact between a member of that age group and an adult is inherently forcible.  Aplee. Br. at 8.  Second, the government relies upon the definition of a "crime of violence" provided in the commentary to U.S.S.G. § 2L1.2.  According to the government, § 2L1.2 encompasses a <u>narrower</u> set of crimes than does § 4B1.2, yet specifically includes statutory rape and sex offenses where consent is not legally valid.  Thus, the government argues that because statutory rape is within the (narrower) ambit of § 2L1.2, it must also fall within the scope of § 4B1.2.  Aplee. Br. at 10–11.  We are not persuaded.

Because the "crime of violence" definition given by § 2L1.2 is relevant to both of the government's arguments, we start there.  That section sets forth the Guidelines' offense level for unlawful entry, or unlawfully remaining in, the United States.  The commentary to § 2L1.2 defines as a "crime of violence:"

> [A]ny of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, <u>forcible sex offenses</u> (including where consent to the conduct is not given <u>or is not legally valid</u>, such as where consent to the conduct is involuntary, incompetent, or coerced), <u>statutory rape</u>, sexual abuse of

a minor, . . . .

§ 2L1.2(b)(1), App. Note 1(B)(iii) (emphasis added).

We are not persuaded that Mr. Wray's prior offense was a "forcible sex offense" because the victim was not capable of giving legal consent. We do not quarrel with the assertion that the Colorado statute "presupposes the inability of a female between the ages of 15 and 17 to consent." We disagree, however, with the broad proposition that statutes withdrawing the possibility of legal consent are per se "forcible sex offenses" for purposes of Note 1 to § 4B1.2.

The text of Note 1 indicates that the phrase "forcible sex offenses" does not necessarily include all sex offenses where there is no legal consent. We find the Fourth Circuit's reasoning in United States v. Leshen persuasive:

> [T]he very inclusion of the modifier 'forcible' demonstrates that the Sentencing Commission contemplates some sex offenses as nonforcible . . . We also find significant that in all other respects the commentary, text, and the ACCA have identical coverage. All other offenses listed in the commentary (1) plainly have as elements the use of physical force (e.g., murder, kidnapping, aggravated assault), (2) are repetitions of offenses enumerated in the Guideline text (e.g., burglary of a dwelling, arson, extortion), or (3) by their terms present a serious potential risk of physical injury that is similar in kind and degree to listed offenses (e.g., manslaughter, robbery).

453 F. App'x 408, 415 (4th Cir. 2011) (unpublished). The absence of legal consent does not preclude the possibility, in the context of statutory rape, of factual consent. And in light of "forcible" as a modifying term, we respect the distinction in Colorado's sexual assault statute between forcible and non-forcible

- 11 -

sexual assaults. See id. at 413; compare Colo. Rev. Stat. § 18-3-402(1)(e) with § 18-3-402(1)(a). Bound as we are to employ the categorical approach, comparing the elements of the offense in question to the examples set forth in the guideline, we cannot say that Mr. Wray's offense is, categorically, a "forcible" sex offense.

The government also argues that because § 2L1.2's "crime of violence" definition includes, inter alia, statutory rape and forcible sex offenses where consent "is not legally valid," the "broader" § 4B1.2 must also include those offenses. For a number of reasons, we find the exact opposite. First, the felon in possession of a firearm guideline, § 2K2.1, cross-references § 4B1.2 and its "crime of violence" definition, not § 2L1.2. If the Sentencing Commission wanted to cross-reference to the definition set forth § 2L1.2, it easily could have done so. In the alternative, it could have included a uniform "crime of violence" definition applicable to every section of the Guidelines. Second, the maxim expressio unius est exclusio alterius applies here. See Tenn. Valley Auth. v. Hill, 437 U.S. 153, 188 (1978) (the express inclusion of one thing implies the purposeful exclusion of another). We again agree with the Fourth Circuit's reasoning in Leshen: "[T]he Commission, when it added the parenthetical clause to the Immigration Guideline in 2008, declined to add the clause to the Career-Offender Guideline." 453 F. App'x at 415–16. The express inclusion in one part of the Guidelines of statutory rape and "forcible sex offenses" where consent is not legally valid suggests, at a minimum, that statutory rape offenses not

precluding the possibility of factual consent are not per se "forcible sex offenses" under § 4B1.2.

None of our prior decisions are inconsistent with our holding that a conviction under a sexual assault statute withdrawing the possibility of legal consent is not, per se, a "forcible sex offense." The cases cited by the government in support of its argument, namely United States v. De La Cruz-Garcia, 590 F.3d 1157 (10th Cir. 2010), United States v. Austin, 426 F.3d 1266 (10th Cir. 2005), and United States v. Vigil, 334 F.3d 1215 (10th Cir. 2003), are not controlling. See Aplee. Br. at 8–10. In essence, the government cites these cases for the proposition that "the impossibility of legal consent under child sex-abuse statutes is directly analogous to the kind of non-consensual sexual touching that constitutes rape." Vigil, 334 F.3d at 1221; see Austin, 426 F.3d at 1279 ("[W]e must reject Mr. Austin's assertion the act was consensual, given Colorado has determined a person under the age of eighteen is incapable of such consent."). We question the government's reliance on De La Cruz-Garcia, however, because that case considered whether the defendant's touching of a minor without her factual consent was "sexual abuse of a minor" under § 2L1.2, not § 4B1.2. Austin and Vigil are also not dispositive. In Austin, this court explicitly acknowledged that it was not addressing the "forcible sex offense" argument because the government had not raised it. Austin, 426 F.3d at 1271. And while Vigil did not make clear whether it was relying on the "forcible sex offense" phrase or the

- 13 -

residual clause, the crime at issue in that case was not merely statutory rape; the defendant was convicted of aggravated incest. Vigil, 334 F.3d at 1217. This court concluded that that crime, not statutory rape, was a crime of violence under § 4B1.2. In Vigil, we specifically declined to address Seventh Circuit precedent holding that factually consensual sexual contact does not constitute a "crime of violence." Id. at 1222. We declined to consider those cases, we stated, because "they do not consider the aggravating factor of incest." Id.

In contrast to these decisions, our decision in United States v. Dennis, 551 F.3d 986 (10th Cir. 2008), supports our conclusion. In Dennis, we held that defendant's prior conviction for violating Wyoming's indecent liberties with a minor statute was not a "crime of violence" under § 4B1.2. We applied the categorical approach to the Wyoming statute, which "criminalizes activities that are otherwise permissible between consenting adults when one of the parties is under the age of eighteen years," and rejected the argument that the offense was a "forcible sex offense." Dennis, 551 F.3d at 990. We noted that "the indecent liberties statute simply lacks force or assault as an element, let alone lack of consent." Id. The same can be said of Colo. Rev. Stat. § 18-3-402(1)(e).

Accordingly, we conclude that the text and structure of the relevant Guidelines provisions do not require a per se rule that all violations of age-based sexual contact statutes are "forcible sex offenses" under Application Note 1 to § 4B1.2. Thus, Colo. Rev. Stat. § 18-3-402(1)(e), which does not preclude the

possibility of factual consent, is not categorically a "forcible sex offense" under § 4B1.2.

2. Is the Sexual Assault Conviction Within the Residual Clause?

We next consider whether the conviction falls within the residual clause of § 4B1.2(a)(2) because it "otherwise involves conduct that presents a serious potential risk of physical injury to another." We hold that it does not.

As noted above, we are not painting on a blank canvas. Much of the disagreement in this case concerns whether our pre-Begay cases holding that sex offenses involving minors present a serious potential risk of physical injury are outcome determinative. We think it clear, however, that our cases interpreting Begay and Sykes establish that Begay survived Sykes, albeit in a limited manner. The commission of a strict liability offense, while potentially posing a serious risk of physical injury, does not involve purposeful, violent, or aggressive conduct. In other words, the commission of such an offense does not involve a risk that is "roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses. Begay, 553 U.S. at 143. Accordingly, where a defendant's prior conviction is for a strict liability offense, the Begay exception applies and the conviction is outside the scope of the residual clause.

Following Begay, this court employed a two-part analysis to determine whether a defendant's prior conviction was included under the residual clause of either § 924(e)(2)(B)(ii) or § 4B1.2(a)(2). United States v. Maldonado, 696 F.3d

- 15 -

1095 (10th Cir. 2012); United States v. Sandoval, 696 F.3d 1011, 1015–16 (10th Cir. 2012) (citing United States v. McConnell, 605 F.3d 822, 826–27 (10th Cir. 2010)).  Under that approach, we asked "(1) whether the offense presents a serious potential risk of physical injury to another and (2) whether the offense is roughly similar, in kind as well as degree of risk posed, to the enumerated crimes."  Sandoval, 696 F.3d at 1015–16 (internal quotations omitted).  After Sykes, however, we recognized the Supreme Court's "partial retreat from Begay." Sykes, 131 S. Ct. at 2278 (Thomas, J., concurring).  We embraced Sykes' admonition that, "[i]n general, levels of risk divide crimes that qualify from those that do not."  Id. at 2275.  Nonetheless, we did not conclude then, nor do we conclude now, that Sykes abrogated Begay entirely.  As the concurring and dissenting opinions in Sykes make clear, Begay survived Sykes.

We read our post-Sykes cases as unequivocally establishing a Begay "exception" to Sykes' general rule that levels of risk distinguish qualifying offenses from non-qualifying offenses.  Sykes, 131 S. Ct. at 2275.  "Where the felony at issue is 'not a strict liability, negligence, or recklessness crime' the test is not whether the crime was 'purposeful, violent, and aggressive' but whether it is 'similar in risk to the listed crimes.'"  United States v. Smith, 652 F.3d 1244, 1248 (10th Cir. 2011) (citing Sykes, 131 S. Ct. at 2276); see also Sandoval, 696 F.3d at 1016 ("After Sykes, it is not necessary to reach Begay's 'purposeful' inquiry when the mens rea of the offense requires intentional conduct."); United

- 16 -

States v. Perez-Jiminez, 654 F.3d 1136, 1141 n.4 (10th Cir. 2011) ("Sykes limited Begay's 'purposeful, violent, and aggressive' test to strict liability, negligence, and recklessness crimes."); United States v. Armijo, 651 F.3d 1226, 1237 n.14 (10th Cir. 2011). Thus, our threshold inquiry is whether Colo. Rev. Stat. § 18-3-402(1)(e) is a strict liability, negligence, or recklessness crime. If we find that it is, our task comes to an abrupt end—the prior conviction is outside the scope of the residual clause. If it is not a strict liability, negligence, or recklessness crime, we ask only whether the offense "presents a serious potential risk of physical injury to another"—a question we readily admit our prior cases already answer in the affirmative.

The statute at issue here, Colo. Rev. Stat. § 18-3-402(1)(e), is akin to the strict liability statute at issue in Begay, and we therefore find the Begay exception applies. Under that statute, a person is guilty of sexual assault if they "knowingly inflict sexual intrusion or sexual penetration on a victim [and] . . . (e) [a]t the time of the commission of the act, the victim is at least fifteen years of age but less than seventeen years of age." Colo. Rev. Stat. § 18-3-402(1)(e) (emphasis added). The parties agree that the mental state "knowingly" does not apply to the "statutory element that makes the conduct illegal—namely, the age of the victim." Aplt. Br. at 22; Aplee. Br. at 24. We agree.

The government contends, however, that this conclusion is irrelevant. According to the government, "[t]he sexual act requires a mens rea, and the

absence of a <u>mens rea</u> with respect to the victim's age does not result in a strict liability offense akin to the DUI in <u>Begay</u>." Aplee. Br. at 24. On this point, we disagree.

Consider the following. Consensual sex is generally lawful. In the context of statutory rape, the only thing that makes it unlawful is the age of the (younger) participant. In order to violate the Colorado statute at issue here, a defendant need not know the age of the younger participant. Thus, the <u>only</u> element of the offense that distinguishes it from lawful conduct is the element without a <u>mens rea</u> requirement. <u>See</u> <u>United States v. McDonald</u>, 592 F.3d 808, 814 (7th Cir. 2010) ("The act of sexual intercourse or contact, of course, must be volitional, but there is no <u>mens rea</u> requirement with respect to the statutory element that makes that conduct illegal—the age of the victim."). On this basis alone, we can conclude that Colo. Rev. Stat. § 18-3-402(1)(e) is a strict liability statute.

This conclusion is further supported by Colorado law on the subject. In <u>People v. Salazar</u>, 920 P.2d 893, 895 (Colo. App. 1996), the Colorado Court of Appeals held that a similar statute, Colorado's sexual assault of a child statute, provided for strict liability despite the statutory inclusion of the word "knowingly." <u>Id.</u> at 895; <u>see</u> Colo. Rev. Stat. § 18-3-405(1) ("Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim."). The language and purpose of

the statute at issue in Salazar is substantially similar to the language and purpose of the statute now before us; we therefore find it persuasive that the Colorado Court of Appeals found that statute to be one of strict liability despite its inclusion of the word "knowingly."

The government's reliance on the Colorado Supreme Court's decision in Ferguson v. People, 824 P.2d 803 (Colo. 1992), is unavailing. There, the court rejected the defendant's argument that a sexual assault statute prohibiting a psychotherapist from "knowingly" inflicting sexual penetration on one of his clients was a strict liability offense. Id. at 812–13. The court's analysis, however, demonstrates the flaw in the government's argument. Under the court's interpretation of the psychotherapist statute:

> A psychotherapist, therefore, acts 'knowingly' with respect to inflicting sexual penetration on a client when the psychotherapist is aware [1] that he is inflicting sexual penetration [2] on a person who seeks or is receiving psychotherapy from him or when the psychotherapist is aware that his conduct is practically certain to cause submission of the client to an act of sexual penetration.

Ferguson, 824 P.2d at 812 (emphasis added) (interpreting Colo. Rev. Stat. § 18-3-406(2)). Under both of the court's formulations, the psychotherapist is criminally liable only if he knows that the person upon whom he is inflicting sexual penetration is one of his clients. In simpler terms, the court read the mental state "knowingly" to apply to both of the statute's material elements. As we have explained above, the phrase "knowingly" in Colo. Rev. Stat. § 18-3-402(1)(e)

does not apply to the age of the victim, a material element of the offense. Mr. Wray's offense is therefore one of strict liability.

Having concluded that the narrow Begay exception applies in this case, we need not address whether a conviction under the statute at issue presents a serious potential risk of physical injury to another. Indeed, we acknowledge that our precedents firmly establish that many sex offenses involving adult-minor sexual contact present a serious potential risk of physical injury. However, because Colo. Rev. Stat. § 18-3-402(1)(e) is a strict liability offense, Begay instructs us that this is not the type of crime that Congress intended to cover, as it sheds little or no light on whether "an offender, later possessing a gun, will use that gun deliberately to harm a victim." Begay, 553 U.S. at 145.

Because we agree with Mr. Wray that his prior conviction under Colo. Rev. Stat. § 18-3-402(1)(e) is not a "crime of violence" pursuant to U.S.S.G. § 4B1.2, we need not address his constitutional argument that § 4B1.2 is void for vagueness.

REMANDED for resentencing consistent with this opinion.