2013 COA 57

**The PEOPLE of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,**

v.

**Jacob John LAHR, Defendant–Appellant and Cross–Appellee.**

**Court of Appeals Nos. 10CA0501 & 10CA0527**

Colorado Court of Appeals, Div. I.

April 25, 2013

Jefferson County District Court Nos. 08CR1439 & 08CR2280, Honorable Jack W. Berryhill, Judge

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, Colorado; Scott W. Storey, District Attorney, Donna Skinner–Reed, Chief Appellate Deputy District Attorney, Golden, Colorado, for Plaintiff–Appellee and Cross–Appellant

The Noble Law Firm, LLC, Antony M. Noble, Lakewood, Colorado, for Defendant–Appellant and Cross–Appellee

Opinion by JUDGE J. JONES

¶ 1 Defendant, Jacob John Lahr, appeals the judgment of conviction entered on jury verdicts finding him guilty of aggravated robbery, menacing, aggravated motor vehicle theft, possession of a controlled substance, and possession of a weapon by a previous offender (POWPO). The People appeal the district court's sentence. We affirm the judgment, vacate the aggravated robbery sentence, and remand the case for entry of a corrected sentence.

## I. Background

¶ 2 According to the prosecution's evidence, defendant stole a car. After stealing and exchanging a series of license plates, he drove that car, with stolen plate 787NAZ, to a Motel 6. He walked into the lobby, lifted his jacket to reveal a black-handled handgun near his left chest area, and told an employee, S.H., "Give me the money." S.H. put the register drawer on the counter, and defendant placed the bills in his pocket and left. S.H. read the license plate number on the car as defendant drove away, and she reported the robbery to police.

¶ 3 S.H. described the robber as being five feet ten inches tall with a medium build, and wearing a black beanie hat and a dark coat that fell below his hip. She later identified defendant as the robber from a photo array.

¶ 4 About three hours after the Motel 6 robbery, defendant walked into Fascinations, a store less than five miles away from the Motel 6.[1] He shopped for fifteen to twenty minutes before approaching the counter with several items. At the counter, he opened his jacket to show a black-handled gun in a shoulder holster under his left arm, and told an employee, E.O., "Hurry, give me the money in the drawer, hurry up." She put cash from the drawer into a Fascinations bag, along with four videos defendant had brought

---

1. Though less than five miles away from the Motel 6, Fascinations is in a different county, and defendant was tried separately for the Fascinations robbery. *See People v. Lahr,* (Colo. App. No. 11CA0796, June 14, 2012), 2012 WL 2192457 (not published pursuant to C.A.R. 35(f)) (*Lahr I* ).

to the counter. Defendant took the bag and left the store, while E.O. went to the back of the store to report the robbery to her supervisor. E.O. described the robber as having dreadlock-style hair, wearing a black beanie hat, a black muscle shirt, and a black jacket that went past his waist. But she was later unable to identify the robber from a photo array that included defendant's picture.

¶ 5 Fascinations' supervisor, J.S., had twice offered assistance to defendant while he was shopping in the store, and described him as being six feet tall with a medium build, wearing a fleece beanie, a black jacket, and a black shirt, and having medium-length hair. J.S. later identified defendant as the robber from a photo array.

¶ 6 Defendant stole an SUV about twelve hours after the Fascinations robbery. He put a stolen license plate on the SUV, and parked it near the place at which he was arrested shortly thereafter. In the SUV, the police found, as relevant here, a gun holster, a revolver, a dark coat with keys to the stolen car, a black tank top, a brown wig, baggies containing methamphetamine, two videos consistent with those taken from Fascinations, a Fascinations store bag, and defendant's fingerprints.

¶ 7 Police later recovered the stolen car likely used in the Motel 6 robbery, then bearing stolen license plate 871 HBG. In the car they found, as relevant here, cigarette butts with defendant's DNA and a hair matching the wig found in the SUV.

¶ 8 The People charged defendant, in two separate cases in Jefferson County, with two counts of aggravated robbery (of the Motel 6), one count of menacing, one count of aggravated motor vehicle theft (of the SUV), one count of POWPO, one count of possession of a controlled substance, and eight habitual criminal counts. The district court granted the People's motion to join the cases. The court also granted defense counsel's motion to bifurcate the trial of the POWPO charge from the trial on the other charges.

¶ 9 The People moved to introduce evidence of the Fascinations robbery. At a pretrial hearing, the People argued that the evidence was relevant and admissible under CRE 404(b) as res gestae evidence, to identify defendant as the perpetrator of the Motel 6 robbery, and to show a common plan, scheme, or design. The court ruled that evidence of the Fascinations robbery was admissible to prove identity under the four-part *Spoto* test. *See People v. Spoto*, 795 P.2d 1314, 1319 (Colo.1990).

¶ 10 The jury first found defendant guilty of aggravated robbery, menacing, aggravated motor vehicle theft, and possession of a controlled substance. The People then presented evidence on the bifurcated POWPO charge. The jury found defendant guilty of that offense as well. The court adjudicated defendant a habitual criminal, and sentenced him to two terms of forty-eight years in the custody of the Department of Corrections, to be served concurrently.

¶ 11 On appeal, defendant contends that the district court erred by (1) allowing evidence of the Fascinations robbery; and (2) denying his motion for a new trial after the court mistakenly referred to the POWPO charge before the jury deliberated on the other charges. The People contend on cross-appeal that the district court erred in its interpretation of the statutory presumptive range for an aggravated robbery sentence. We address each contention in turn.

## II. Other Act Evidence

■ ¶ 12 Defendant first contends that the district court erred by incorrectly applying the second part of the *Spoto* test for admission of other act evidence.[2] We are not persuaded.

### A. Standard of Review

■ ¶ 13 We review a district court's decision to admit other act evidence for an abuse of discretion, and we will not disturb that

---

**2.** Defendant also argues that the district court erred by incorrectly applying the fourth part of the *Spoto* test, but we do not address that argument because it appears for the first time in defendant's reply brief. *See People v. Boles*, 280

P.3d 55, 61 n.4 (Colo.App.2011) (declining to address an argument raised for the first time in the defendant's reply brief); *People v. Plancarte*, 232 P.3d 186, 193–94 (Colo.App.2009) (same).

ruling on appeal unless it was manifestly arbitrary, unreasonable, or unfair. *Yusem v. People,* 210 P.3d 458, 463 (Colo.2009); *People v. Rowe,* 2012 COA 90, ¶ 35, 318 P.3d 57.

### B. Discussion

¶ 14 Evidence of other crimes, wrongs, or acts is admissible for purposes independent of an inference of bad character, subject to a four-part test initially articulated in *Spoto. Yusem,* 210 P.3d at 463; *People v. Herdman,* 2012 COA 89, ¶ 43, 310 P.3d 170; *see* CRE 404(b). Before admitting such evidence, the court must find that (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the evidence's logical relevance is independent of the prohibited inference that the defendant committed the crime charged because he was acting in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Spoto,* 795 P.2d at 1318.

¶ 15 Evidence is logically relevant if it has "any tendency to make the existence of [a material fact] more probable or less probable than it would be without the evidence." CRE 401; *see Yusem,* 210 P.3d at 463; *Spoto,* 795 P.2d at 1318. In this case, the district court ruled that evidence of the Fascinations robbery was logically relevant because it tended to make more probable the material fact that defendant was the person who robbed the Motel 6 and/or stole the SUV. We find no abuse of discretion in that ruling.

¶ 16 Defendant's theory of the case was that another person committed both the Motel 6 robbery and the SUV theft. At trial, defendant challenged S.H.'s identification because she had been only ninety-five percent sure of the identification from the photo array. Defendant admitted that he had been in the car where his DNA was found, but denied that the car had been used in the Motel 6 robbery (in part because the plate found on the recovered car was not the same as the plate S.H. had seen). Defendant also admitted that he had been in the SUV, but denied that he had stolen it. Thus, identity was a material fact in dispute at trial.

¶ 17 Citing *People v. Rath,* 44 P.3d 1033 (Colo.2002), defendant argues that the rob-

beries of the Motel 6 and Fascinations were too dissimilar and insufficiently unique for evidence of the Fascinations robbery to be logically relevant to the identity of the perpetrator of the Motel 6 robbery. *See id.* at 1042 n.7 ("The modus theory of identifying the defendant as the criminal requires the highest degree of similarity . . . ." (quoting Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 8:07 (2001))). Defendant points to the following dissimilar facts about the perpetrator of the Fascinations robbery: (1) he was described as having dreadlocks, and (2) he shopped for a while before robbing the store.

¶ 18 But, for evidence of another crime to be admissible for the purpose of proving identity, the other crime need not be identical in all respects. *People v. Garner,* 806 P.2d 366, 375 (Colo.1991). Rather, the evidence of another crime and the crime charged, considered in its totality, must manifest distinctive features that make it more likely that the person who committed the other crime also committed the crime charged. *Id.* And a court may consider numerous less unique factors in determining the degree of similarity between the "other act" and the crime charged. *See United States v. Shumway,* 112 F.3d 1413, 1420 (10th Cir.1997) (enumerating the factor of geographic location; noting that many less unique factors, considered together, may be of significant probative value regarding the perpetrator's identity; applying Fed. R. Evid. 404(b)); *see also United States v. LaFlora,* 146 Fed.Appx. 973, 975 (10th Cir.2005) (considering robberies close in time to be evidence of a common plan; applying Fed. R. Evid. 404(b)).

¶ 19 Here, the robberies occurred in close geographic and temporal proximity to each other. The perpetrator of each robbery was around six feet tall, wore a black beanie hat and longer black coat, and showed a black-handled gun near his left chest area when demanding money. Though defendant is bald, the difference in reported hairstyles was explained by the wig found in the stolen SUV. And the police found the following robbery-related evidence in the SUV (which

bore defendant's fingerprints): a dark coat (like the one worn by the perpetrator of each robbery), a gun, a holster, and Fascinations items consistent with the second robbery. Moreover, witnesses to each robbery had identified defendant as the perpetrator. Considering the totality of these factors, we conclude that the district court did not abuse its discretion by finding that evidence of the Fascinations robbery was logically relevant to the identity of the perpetrator of the Motel 6 robbery.[3]

### III.   Motion for a New Trial

¶ 20 Defendant next contends that the district court erred by denying his motion for a new trial. We reject this contention.

¶ 21 After presentation of the evidence, the court provided the jury with verdict forms. Though the POWPO charge had been bifurcated from this portion of the trial, the verdict forms included, on the last page, a form entitled "Charge of Possession of a Weapon by a Previous Offender (Count F)." The court read the title aloud, then told the jurors that the Count F form had been included in error and asked them to hand their copies to the bailiff. According to the district court's subsequent order, the court also instructed the jurors to disregard that page.[4] The jurors had not been instructed on the POWPO charge, no evidence had been presented on that charge, and the court considered the error nonprejudicial.

¶ 22 Defendant moved for a new trial after the verdicts, arguing that hearing the name of the charge itself had alerted the jurors to defendant's prior criminal record and deprived him of a fair trial. The district court denied the motion.

### A.   Standard of Review

¶ 23 A new trial is a "drastic remedy." *Harris v. People*, 888 P.2d 259, 267 (Colo.1995); *People v. Everett*, 250 P.3d 649,

662 (Colo.App.2010). We will not disturb a district court's decision to deny a motion for a new trial absent a clear showing of an abuse of discretion. *People v. Gallagher*, 194 Colo. 121, 124, 570 P.2d 236, 238 (1977); *People v. Holt*, 266 P.3d 442, 444 (Colo.App. 2011). A court abuses its discretion in denying a motion for a new trial only when the inadmissible evidence was likely to have substantially prejudiced the jurors despite the use of any alternative remedies. *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (substantial risk that the jurors would consider testimony despite instruction to the contrary necessitated a new trial); *cf. People v. Collins*, 730 P.2d 293, 303 (Colo.1986) (mistrial is "only warranted where the prejudice to the accused is too substantial to be remedied by other means"); *People v. Whittiker*, 181 P.3d 264, 273 (Colo.App.2006) (same as *Collins*).

### B.   Discussion

¶ 24 "[A]ny information that is not properly received into evidence or included in the court's instructions is extraneous to the case and improper for juror consideration." *People v. Harlan*, 109 P.3d 616, 624 (Colo. 2005). But all inadmissible evidence is not equally prejudicial. A mere reference to a defendant's past criminal act, for example, is not per se prejudicial. *People v. Abbott*, 690 P.2d 1263, 1269 (Colo.1984) (regarding a witness's reference to "criminals" in a photo array). And an ambiguous reference to evidence of a defendant's criminality does not necessitate a new trial. *People v. Vigil*, 718 P.2d 496, 505–06 (Colo.1986) (police officer's reference to "contraband" seized from the defendant's home did not necessitate a new trial); *Whittiker*, 181 P.3d at 274 ("largely innocuous" references to the defendant's gang affiliation and drug use did not necessitate a new trial); *People v. Salazar*, 920 P.2d 893, 897 (Colo.App.1996) (testimony permitting inference of the defendant's involvement

---

3. We note that another division of this court has held that the evidence of the Motel 6 robbery was logically relevant to showing the identity of the perpetrator of the Fascinations robbery. *See Lahr I*(deciding defendant's appeal of the Fascinations robbery case).

4. Defendant disputes that the court instructed the jurors to disregard the form. The proceedings were not on the record at that point, and the record before us does not indicate whether the district court instructed the jurors to disregard the form. But nothing in the record contradicts the court's recollection.

in a domestic violence incident was not so highly prejudicial as to require a new trial). Moreover, we deem inadmissible evidence to have less prejudicial impact when the reference is "fleeting." *Vigil,* 718 P.2d at 505–06; *see Salazar,* 920 P.2d at 897 (witness's "passing reference" to the defendant's recent release from prison was not of such magnitude as to require a new trial).

¶ 25 Generally, the erroneous admission of evidence may be remedied by instructing the jurors to disregard the evidence. *Vigil v. People,* 731 P.2d 713, 716 (Colo.1987). Absent contrary evidence, we presume that jurors follow a district court's instructions. *People v. Butler,* 224 P.3d 380, 387 (Colo.App.2009).

¶ 26 The district court read the words "previous offender" on a verdict form, then immediately told the jurors that the form was a mistake and to hand their copies in. The court's reference to defendant's possible criminal past was fleeting. And it was ambiguous because it did not name a crime. Further, under the circumstances, the jurors may have considered the reference a mere clerical error.

¶ 27 Assuming the court gave an instruction to disregard the form, the reference was clearly not so prejudicial that any prejudice derived therefrom could not have been remedied by the instruction. And even if the court did not so instruct, we do not view the fleeting, ambiguous reference as so prejudicial that the drastic remedy of declaring a mistrial was required. Therefore, we conclude that the district court did not abuse its discretion by denying defendant's motion for a new trial. *See Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953) ("A defendant is entitled to a fair trial but not a perfect one."); *People v. Dunaway,* 88 P.3d 619, 631 (Colo.2004) (same).

## IV. Habitual Criminal Sentencing

¶ 28 The People contend that the district court imposed an illegal sentence for defendant's aggravated robbery conviction. They argue that the court was required first to modify the maximum of the presumptive range because the offense was an extraordinary risk crime, and then to apply the habitual criminal enhancement to the modified maximum of the presumptive range. We agree.

¶ 29 The court imposed a forty-eight-year prison sentence for defendant's aggravated robbery conviction.[5] It did so by multiplying the maximum of the presumptive range for a class 3 felony (twelve years, without an extraordinary risk crime modification), § 18–1.3–401(1)(a)(V)(A), C.R.S.2012, by four (as required by the habitual criminal sentencing statute). *See* § 18–1.3–801(2)(a), C.R.S.2012. Though the prosecutor argued for calculating the sentence based on the sixteen-year modified maximum for a class 3 extraordinary risk felony, *see* § 18–1.3–401(10), the court concluded that the habitual criminal sentencing statute was ambiguous, and construed the statute in favor of defendant, applying the rule of lenity.

### A. Standard of Review

¶ 30 The People's contention presents an issue of statutory interpretation, which we review de novo. *Romero v. People,* 179 P.3d 984, 986 (Colo.2007); *People v. Chase,* 2013 COA 27, ¶16, —— P.3d ——.

### B. Discussion

¶ 31 In interpreting a statute, our primary goal is to give effect to the General Assembly's intent. *Romero,* 179 P.3d at 986; *Chase,* ¶ 16. To do so, we first look to the statute's plain language, giving the words and phrases therein their plain and ordinary meanings. *People v. Perez,* 238 P.3d 665, 669 (Colo.2010); *People v. Green,* 2012 COA 68, ¶ 23, 296 P.3d 260. And we read the statutory language at issue in the context of the statute as a whole, giving harmonious and sensible effect to the language of each provision. *People v. Martinez,* 70 P.3d 474, 477 (Colo.2003); *People v. Dinkel,* 2013 COA 19, ¶ 7, —— P.3d ——. When the statutory language is unambiguous, we enforce the statute

---

5. The district court sentenced defendant on only one conviction for aggravated robbery because one conviction merged with the other.

as written, without resorting to other rules of statutory construction. *People v. Apodaca-Zambori,* 2013 COA 29, ¶ 16, —— P.3d ——; *Dinkel,* ¶ 7.

¶ 32 "Aggravated robbery is a class 3 felony and is an extraordinary risk crime that is subject to the modified presumptive sentencing range specified in section 18–1.3–401(10)." § 18–4–302(3), C.R.S.2012.

Subsection 18–1.3–801(2) (a), as relevant here, provides:

> [E]very person convicted in this state of any felony, who has been three times previously convicted, . . . shall be adjudged an habitual criminal and *shall be punished* for the felony offense of which such person is convicted by imprisonment in the department of corrections *for a term of four times the maximum of the presumptive range pursuant to section 18–1.3–401* for the class of felony of which such person is convicted.

(Emphasis added.)

¶ 33 Section 18–1.3–401, C.R.S.2012, as relevant here, defines the presumptive sentencing range for aggravated robbery as follows: (1) subsection (1)(a)(V)(A) provides that the presumptive sentencing range for class 3 felonies is four to twelve years; (2) subsection (10) (a) provides that the maximum sentence in the presumptive range "shall be increased by four years" for class 3 felonies designated as "extraordinary risk" crimes; and (3) subsection 10(b)(IX) provides that aggravated robbery is an extraordinary risk crime.

█ ¶ 34 Reading all subsections of section 18–1.3–401 together, we conclude the plain language of the statute unambiguously defines the presumptive sentencing range for aggravated robbery as four to sixteen years. That the presumptive range for this particular class 3 felony is different from the presumptive range for some other class 3 felonies does not render it any less the presumptive range for the offense at issue.

¶ 35 Other divisions of this court also have held that a presumptive sentencing range must be modified for enumerated "extraordinary risk" crimes, for purposes of subsequently applying a sentence multiplier, applying the same or analogous sentencing provisions. *See People v. Hoefer,* 961 P.2d 563, 568 (Colo.App.1998) (concluding that the presumptive sentencing range of a defendant convicted of an extraordinary risk crime is modified before applying the habitual criminal enhancement; applying § 18–1–105(9.7)(a) & (b)(X), C.R.S.1997, which was relocated to § 18–1.3–401 in 2002); *People v. Greymountain,* 952 P.2d 829, 831 (Colo.App. 1997) (the subsection then enumerating extraordinary risk offenses, § 18–1–105(9.7), implicitly modified the presumptive sentencing range for those offenses; applying the modified range to the crime of violence statute, § 16–11–309, C.R.S. 1996, which was relocated to § 18–1.3–406 in 2002).[6]

¶ 36 We are not persuaded to depart from the reasoning of these decisions by defendant's argument that because the General Assembly did not amend the language of the habitual criminal sentencing statute when it amended the crime of violence sentencing statute, we must conclude that the General Assembly intended to alter the existing law for sentencing a habitual criminal.

¶ 37 In 2004, the General Assembly amended language in the crime of violence sentencing statute, section 18–1.3–406, C.R.S. 2012, to specify that the presumptive range is to be modified by the extraordinary risk crime sentencing statute before calculating a sentence enhancement.[7] In the same year, it amended the aggravated robbery statute to

---

6. Because we conclude that the relevant statutory language is unambiguous, the rule of lenity does not apply. *See Dinkel,* ¶ 19 ("'[The rule of lenity] may be employed only to resolve an unyielding statutory ambiguity, not to create one.'").

7. The General Assembly amended subsection 18–1.3–406(1)(a) to provide: "Any person convicted of a crime of violence shall be sentenced pursuant to THE PROVISIONS OF section 18–1.3–401(8) to the department of corrections for a term of incarceration of at least the midpoint in, ~~the presumptive range~~ but not more than twice the maximum OF, THE PRESUMPTIVE RANGE provided for such offense in section 18–1.3–401(1)(a), AS MODIFIED FOR AN EXTRAORDINARY RISK CRIME PURSUANT TO SECTION 18–1.3–401(10). . . ." Ch. 200, sec. 2, § 18–1.3–406(1)(a), 2004 Colo. Sess. Laws 634 (inserted words capitalized and deleted words stricken through).

provide that aggravated robbery "is an extraordinary risk crime that is subject to the modified presumptive sentencing range specified in section 18–1.3–401(10)." Ch. 200, sec. 8, § 18–4–302(3), 2004 Colo. Sess. Laws 636.

¶ 38 True, the General Assembly did not amend the habitual criminal sentencing statute when it amended sections 18–1.3–406 and 18–4–302. But defendant does not cite, and we are not aware of, any legal authority for the proposition that we may deduce the General Assembly's intent to change the meaning of a statute from its taking no action to amend that statute.

■ ¶ 39 The plain language of subsection 18–1.3–801(2)(a) requires that a habitual criminal be punished by imprisonment "for a term of four times the maximum of the presumptive range pursuant to section 18–1.3–401." § 18–1.3–801(2)(a). Thus, section 18–1.3–801(2) requires a sentence of sixty-four years for a defendant convicted of aggravated robbery and adjudicated a habitual criminal. *See People v. Perry,* 981 P.2d 667, 668 (Colo.App.1999) (the sentencing court was required to impose the sentence mandated by the habitual criminal statute and had no discretion to reduce the sentence; the court properly modified the presumptive sentencing range for an extraordinary risk crime before multiplying by the habitual criminal sentence enhancement). It follows that the district court's sentence for the aggravated robbery conviction is illegal.

¶ 40 The judgment is affirmed, the aggravated robbery sentence is vacated, and the case is remanded to the district court for resentencing as provided in this opinion.

JUDGE BERNARD and JUDGE RICHMAN concur.