Opinion by JUDGE LICHTENSTEIN
*828 ¶ 1 The offense of retaliation against a witness or victim, as defined in section 18-8-706, C.R.S. 2016, applies to retaliation against an individual because of that person's relationship to criminal proceedings. This appeal requires us to decide whether it also applies to retaliation against an individual because of that person's relationship to a civil proceeding. We conclude that it does not and therefore vacate defendant Burnest Alvis Johnson's witness retaliation conviction.
¶ 2 Johnson also challenges the trial court's denial of his motions for a mistrial and a new trial. We perceive no error in those rulings and thus affirm the judgment of conviction as to his remaining convictions.
I. Background
¶ 3 In February 2013, the Colorado Department of Human Services (DHS) took custody of Johnson's two children based on information from Elizabeth Ranals, Johnson's former friend.
¶ 4 According to the People's evidence, Johnson and his girlfriend drove to a DHS office three hours after the children were removed, but the office was closed. Before leaving, Johnson fired shots into a vehicle in the parking lot that appeared similar to the vehicle driven by the DHS employees who had removed the children hours earlier. Believing Ranals provided the information that led to the removal of his children, Johnson drove to her home and fired several shots into the house. Ranals and two children were inside the house at the time, but they were not injured.
¶ 5 The police arrested Johnson several days later, charging him with numerous counts, including four counts of attempted first degree murder and, as pertinent here, retaliation against a witness or victim.
¶ 6 The prosecution's theory in support of the witness retaliation count was that Johnson shot into Ranals' home because she had reported him to DHS, and that he believed she might be a witness in the dependency and neglect proceedings that "could cause him to lose his children."
¶ 7 The jury acquitted Johnson of seven charges, including the attempted first degree murder counts.[1] The jury convicted him of the remaining charges, including retaliation against a witness or victim.[2]
¶ 8 Johnson filed a motion for a new trial, which the court denied.
II. Sufficiency of the Evidence
¶ 9 Johnson contends that the offense of retaliation against a witness, as defined in section 18-8-706, applies only to retaliation against a witness because of the witness's relationship to a criminal proceeding. He asserts that because the prosecution only presented evidence regarding Ranals' perceived involvement in a civil dependency and neglect proceeding, his conduct could not have constituted witness retaliation under this statute. We agree and vacate his conviction.
A. Standard of Review
¶ 10 Statutory interpretation is a question of law that we examine de novo. Bostelman v. People , 162 P.3d 686, 689 (Colo. 2007). We also examine de novo whether sufficient evidence exists to support a conviction. Clark v. People , 232 P.3d 1287, 1291 (Colo. 2010). Divisions of this court differ on whether a plain error analysis applies, as a standard of reversal, to an unpreserved sufficiency claim premised on a question of law. Compare People v. McCoy , 2015 COA 76M, 444 P.3d 766 (declining to analyze under a plain error standard) (cert. granted Oct. 3, *829 2016), with People v. Lacallo , 2014 COA 78, 338 P.3d 442 (holding that plain error review applies).[3]
¶ 11 We are persuaded by the line of cases holding that a plain error analysis does not apply to unpreserved sufficiency claims premised on a question of law. We share the serious concerns raised about the fundamental fairness of applying plain error review in such cases. See, e.g. , McCoy , ¶ 31 ("By this process, questions of statutory interpretation, such as are at issue here and in Lacallo , could remain unresolved indefinitely, and by this reasoning, innocent defendants could also remain in prison indefinitely."); Lacallo , ¶ 72 (Román, J., concurring in part and dissenting in part) ("But more than anything, I fail to see how plain error review is fair to a defendant who has been convicted despite insufficient evidence in the record to support the conviction.").
B. Statutory Interpretation
¶ 12 In interpreting statutes, our primary task is to give effect to the intent of the General Assembly. Bostelman , 162 P.3d at 689. We do so by first looking to the plain language of the statute. Id. at 690. The language at issue must be read in the context of the statute as a whole, and a court's interpretation should give consistent, harmonious, and sensible effect to all parts of the statutory scheme. Jefferson Cty. Bd. of Equalization v. Gerganoff , 241 P.3d 932, 935 (Colo. 2010).
¶ 13 If a statute is ambiguous, we may look for guidance in prior law, statutory history, the legislature's objective, and even the placement of the statute within a piece of broader legislation. Id. at 935-36 ; see People v. Hickman , 988 P.2d 628, 634-35 (Colo. 1999).
C. Section 18-8-706
¶ 14 Section 18-8-706 provides that an individual commits retaliation against a witness or victim
if such person uses a threat, act of harassment as defined in section 18-9-111, or act of harm or injury upon any person or property, which action is directed to or committed upon a witness or a victim to any crime , an individual whom the person believes has been or would have been called to testify as a witness or victim, a member of the witness' family, a member of the victim's family, an individual in close relationship to the witness or victim , an individual residing in the same household with the witness or victim , as retaliation or retribution against such witness or victim .
(Emphasis added.)
¶ 15 In Hickman , our supreme court construed this statute in the context of a facial challenge for vagueness and overbreadth. The court upheld the statute's constitutionality on the vagueness challenge, concluding that "the statute by the plain meaning of its terms requires the defendant to have ... the specific intent to retaliate or to seek retribution against a person protected by the statute because of that person's relationship to a criminal proceeding." 988 P.2d at 645. However, this conclusion addressed only the narrow issue of whether the 1992 amendments to the statute removed its specific intent requirement, causing impermissible overbreadth or vagueness.
¶ 16 We must resolve a question not directly addressed in Hickman . Did the General Assembly intend the statute to only protect persons because of their relationship to criminal, and not civil, proceedings?
¶ 17 We first turn to the plain language to discern the legislative intent. The statute identifies different classifications of persons protected under it. These protected persons include not only "a witness or a victim to any crime ," but also "an individual whom the [defendant] believes has been or would have been called to testify as a witness or a victim," a family member of "the" witness or victim, and a person in a close personal relationship or in the same household as "the" witness or victim. § 18-8-706 (emphasis added).
*830 ¶ 18 The initial classification modifies the phrase "a witness or a victim" with the words "to any crime ." The remaining classifications simply use the phrase "a witness or victim" without any modifiers that expressly limit it to, or expand it beyond, criminal proceedings. Yet, some of these latter classifications refer back to "the" victim or witness. Due to this lack of clarity and possible inconsistency, we cannot readily discern whether the legislature intended to limit all the classifications to refer only to witnesses and victims "to any crime." Thus, we conclude that the language is ambiguous and turn to additional interpretative aids to discern the legislative intent.
¶ 19 Hickman guides our analysis of the legislative intent. There, the court reviewed the legislative history and purpose of section 18-8-706. The court noted that the General Assembly intended this law to protect persons who are or are believed to be witnesses in criminal proceedings. Hickman , 988 P.2d at 635, 645. Even the partial dissent observed that the General Assembly enacted section 18-8-706 "to protect the administration of criminal justice" because "[w]itnesses are indispensable participants in our criminal justice system." Id. at 646 (Mullarkey, C.J., concurring in part and dissenting in part).
¶ 20 The court also considered the statute's placement in title 18 as part of the "Colorado Victim and Witness Protection Act of 1984" (the Act) as evidence of the legislature's intent to protect witnesses to criminal proceedings. See id. at 645 (majority opinion).
¶ 21 We have also examined other sources of legislative intent. And this examination further corroborates Hickman 's construction of the statute.
¶ 22 For example, the title of the enacting bill evidences a legislative intent to protect individuals because of their relationship to criminal proceedings: "An Act concerning the commission of crimes, and relating to the rights of victims thereof and witnesses thereto and creating criminal offenses for the protection of such witnesses and victims." Ch. 122, 1984 Colo. Sess. Laws 499.
¶ 23 Further, the House sponsor of the original bill also confirmed that the focus of the bill was to protect witnesses to criminal proceedings. See, e.g. , Second Reading of H.B. 1326 before the House, 54th Gen. Assemb., 2nd Reg. Sess. (Feb. 20, 1984) (statement of Representative Don Mielke, noting this legislation would fill a gap in Colorado's "antiquated" laws because without this change, "if the witness is to a crime before the case is filed, he can be intimidated with, tampered with, harassed with whatever and it's not in violation of the Colorado law").
¶ 24 And, in 1992, the General Assembly significantly amended section 18-8-706 by removing the phrase "for giving testimony in any official proceeding" and adding the phrase "to any crime," among other changes.[4] Whether we construe this amendment as a clarification or a substantive change, the wording of the current statute affirmatively expresses a legislative intent to protect witnesses and victims involved in criminal proceedings.
¶ 25 As noted above, the legislature did not add the phrase "to a crime" after describing each classification of protected person. But reading the statute as a whole, and in the context of its purpose, we are convinced that the legislature limited the scope of its protection to actions that are directed to or committed upon protected persons because of their relationship to a criminal proceeding.
¶ 26 Indeed, in a related statute in the Act, the General Assembly used plain and unmistakable language to communicate its intent to protect persons involved in civil, as well as criminal, proceedings. In *831 section 18-8-706.5, C.R.S. 2016, the General Assembly defined the crime of retaliation against a juror and classified the protected person as a "juror who has served for a criminal or civil trial." (Emphasis added.) Thus, if the legislature had intended for section 18-8-706 to protect persons because of their relationship to civil proceedings, it could have expressly stated so. See Auman v. People , 109 P.3d 647, 656-57 (Colo. 2005) ("Just as important as what the statute says is what the statute does not say.... We should not construe these omissions by the General Assembly as unintentional.").
¶ 27 We are not persuaded by the People's argument that the general definition of "witness" found in section 18-8-702 of the Act evidences a legislative intent to apply the retaliation statute to witnesses in civil, as well as criminal, proceedings.
¶ 28 According to the general definition,
(2) "Witness" means any natural person:
(a) Having knowledge of the existence or nonexistence of facts relating to any crime;
(b) Whose declaration under oath is received or has been received as evidence for any purpose;
(c) Who has reported any crime to any peace officer, correctional officer, or judicial officer;
(d) Who has been served with a subpoena issued under the authority of any court in this state, of any other state, or of the United States; or
(e) Who would be believed by any reasonable person to be an individual described in paragraph (a), (b), (c), or (d) of this subsection (2).
§ 18-8-702, C.R.S. 2016.
¶ 29 This statute specifically references witnesses having knowledge of "any crime" or who have reported "any crime," as well as witnesses who have made statements under oath or have been served with subpoenas. The statute does not mention civil proceedings. Thus, we cannot discern from this definition a clear legislative intent to expansively define "witness" to include those in civil proceedings. Again, the legislature could have used words including witnesses in civil proceedings, had it intended such an expansive definition. See People v. Yascavage , 101 P.3d 1090, 1096 (Colo. 2004).
¶ 30 Accordingly, we conclude that section 18-8-706 applies only to retaliation against witnesses or victims because of their relationship to criminal, and not civil, proceedings. See Hickman , 988 P.2d at 645 ; see also Grynberg v. Ark. Okla. Gas Corp. , 116 P.3d 1260, 1266-67 (Colo. App. 2005) (interpreting section 18-8-708, C.R.S. 2016, and holding that sections "18-8-704, 18-8-705, and 18-8-706 require that the individual suffering intimidation be the victim of or witness to a crime").
D. The Evidence
¶ 31 At trial, the People presented the following evidence to support the offense of witness retaliation: Ranals provided "pertinent information" to DHS, DHS initiated an investigation because of Ranals' information, DHS removed Johnson's children as a result of that investigation, DHS intended to call Ranals as a witness in any subsequent dependency and neglect proceedings, Johnson believed Ranals had provided information to DHS, and this belief angered Johnson enough to drive to Ranals' home and fire a gun into it.
¶ 32 "Dependency and neglect proceedings are civil in nature" and follow the Colorado Children's Code, not the Colorado Criminal Code. People in Interest of Z.P. , 167 P.3d 211, 214 (Colo. App. 2007) ; see People v. D.A.K. , 198 Colo. 11, 16-17, 596 P.2d 747, 751 (1979). Therefore, evidence of Ranals' role as a potential witness in a future dependency and neglect hearing cannot sustain a conviction under section 18-8-706.
¶ 33 Accordingly, we vacate Johnson's conviction for witness retaliation under section 18-8-706.
III. Motions for a Mistrial and for a New Trial
¶ 34 We turn now to Johnson's two other contentions on appeal because they impact his remaining convictions for reckless endangerment, child abuse, illegal discharge of a firearm, and criminal mischief.
*832 ¶ 35 At trial, Ranals made a statement referencing Johnson's acts of domestic violence, despite the trial court's prior ruling that evidence of Johnson's other bad acts were inadmissible. Johnson immediately objected and moved for a mistrial. The court denied the motion, and instead instructed the jurors to disregard that statement.
¶ 36 Johnson filed a motion for a new trial with an affidavit from a juror alleging that, during its deliberations, the jury had ignored the judge's order to disregard Ranals' statement, and that several of the jurors had referred to Johnson as a "thug," a "wife beater," and a "criminal." The judge denied the motion, finding that Colorado Rule of Evidence 606(b) prohibited its consideration of the jury's deliberative process.
¶ 37 Johnson contends that the trial court erroneously denied his motion for a mistrial and also erroneously denied his post-verdict motion for a new trial. For the reasons stated below, we disagree.
A. Motion for a Mistrial
¶ 38 Johnson first contends that the trial court erroneously denied his motion for a mistrial, and he asserts that the court's alternative remedy-a limiting instruction to the jury to disregard this evidence-was insufficient to cure the prejudice. We perceive no abuse of discretion.
¶ 39 We review the denial of a motion for a mistrial for an abuse of discretion. People v. Santana , 255 P.3d 1126, 1130 (Colo. 2011). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. People v. Houser , 2013 COA 11, ¶ 57, 337 P.3d 1238.
¶ 40 A mistrial is a drastic remedy and is warranted only when prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means. People v. Ned , 923 P.2d 271, 274 (Colo. App. 1996).
¶ 41 A jury's exposure to inadmissible evidence of a defendant's past criminal act or violent character is prejudicial, but the prejudice is not necessarily of such magnitude as to require a mistrial. See, e.g. , People v. Salazar , 920 P.2d 893, 897 (Colo. App. 1996) (concluding that testimony permitting inference of the defendant's involvement in domestic violence was not sufficiently prejudicial as to warrant a mistrial).
¶ 42 Generally, instructing the jurors to disregard erroneously admitted evidence is a sufficient remedy. People v. Lahr , 2013 COA 57, ¶ 25, 316 P.3d 74. Yet, no curative instruction will suffice when inadmissible evidence "is so highly prejudicial ... it is conceivable that but for its exposure, the jury may not have found the defendant guilty." People v. Everett , 250 P.3d 649, 663 (Colo. App. 2010) (quoting People v. Goldsberry , 181 Colo. 406, 410, 509 P.2d 801, 803 (1973) ).
¶ 43 The circumstances of each case must be reviewed to determine the prejudice to the defendant. People v. Abbott , 690 P.2d 1263, 1269 (Colo. 1984).
¶ 44 During the prosecution's direct examination of Ranals, it asked her why Johnson and his girlfriend "decided not to keep your company anymore?" Ranals started to respond, stating, "[Johnson] was beating [his girlfriend], and ..." Johnson's counsel immediately objected and moved for a mistrial. The trial court denied the mistrial request but instructed the jury to "disregard the witness's last statement and you may not consider her last statement as evidence for any purpose."
¶ 45 On this record, we conclude that the trial court did not abuse its discretion. To be sure, Johnson's counsel told the court she was concerned that the jury would infer that Johnson's domestic violence was "an ongoing thing" (the jury heard, as res gestae, that Johnson hit his girlfriend during the charged incident). And counsel was concerned of its impact on the attempted murder charges. However, as the trial court noted, Ranals' statement was fleeting and no details were discussed. See Lahr , ¶ 24 ("[W]e deem inadmissible evidence to have less prejudicial impact when the reference is 'fleeting.' ") (quoting People v. Vigil , 718 P.2d 496, 505-06 (Colo. 1986) ).
*833 ¶ 46 And there is no indication in the record that the prosecutor intentionally elicited this information. See Everett , 250 P.3d at 662 ("A motion for a mistrial is more likely to be granted where the prosecutor intentionally elicited improper character evidence."). Rather, the prosecutor explained to the court that he had instructed the witness not to mention prior domestic violence.
¶ 47 In this context, we conclude that the court properly exercised its discretion by directing the jury to disregard Ranal's statement to ensure that Johnson would not be unfairly prejudiced.
¶ 48 But Johnson now argues that the jury was, in fact, unfairly prejudiced, as shown by a juror's affidavit obtained after trial. The affidavit indicated that, during its deliberations, the jury did not follow the court's instruction to disregard Ranals' statement and characterized Johnson as a "thug," "criminal," and "wife beater." We reject this argument for two reasons.
¶ 49 First, even in cases in which a jury does not receive any limiting instruction, a witness's improper reference may not be so prejudicial to require the drastic remedy of a mistrial. See Abbott , 690 P.2d at 1269 (the mere reference to an accused's past criminal act is not per se prejudicial, requiring a mistrial). Indeed, the jury ultimately acquitted Johnson of seven counts, including the five most serious counts-among them, attempted murder.
¶ 50 Second, we decline to consider the affidavit because CRE 606(b) prohibits courts from inquiring into "any matter or statement occurring during the course of the jury's deliberations."
¶ 51 CRE 606(b) states that
[u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith.[5]
¶ 52 The rule "strongly disfavors any juror testimony impeaching a verdict, even on grounds such as mistake, misunderstanding of the law or facts, failure to follow instructions, lack of unanimity, or application of the wrong legal standard." People v. Harlan , 109 P.3d 616, 624 (Colo. 2005) (emphasis added).
¶ 53 By relying on CRE 606(b), we do not disregard Johnson's argument that-without evidence of jury deliberations-defendants have no way of rebutting the well-settled presumption that jurors follow the court's instructions. See, e.g. , Lahr , ¶ 25 ("Absent contrary evidence, we presume that jurors follow a district court's instructions."). Johnson's argument has some force, but we can also envision circumstances in which a juror's statement made outside of deliberations, or a juror's question posed to a witness, may rebut the presumption that the jurors followed a court's limiting instruction. In any event, Johnson asks us to inquire into the jury's deliberative process, but CRE 606(b) expressly prohibits such inquiry.
¶ 54 Based on the circumstances of this case, we conclude that the district court did not abuse its discretion by issuing a limiting instruction instead of granting Johnson's motion for a mistrial.
B. Motion for a New Trial
¶ 55 Johnson filed a post-verdict motion for a new trial based on the juror affidavit. He asserts that the district court's denial of this motion was an abuse of discretion. Again, we disagree.
¶ 56 A trial court has discretion to grant or deny a new trial, and that decision *834 will not be disturbed absent an abuse of that discretion. People v. Holt , 266 P.3d 442, 444 (Colo. App. 2011).
¶ 57 As noted above, the affidavit claimed that during deliberations, the jury had ignored the court's instruction to disregard Ranals' testimony that Johnson was beating his girlfriend. The court denied Johnson's motion because it was based on the jury's deliberations. The court cited People v. Juarez , 271 P.3d 537 (Colo. App. 2011), for the proposition that CRE 606(b) prohibits the district court from inquiring into the jury's deliberative process.
¶ 58 On appeal, Johnson contends that the juror's affidavit implicated one of the narrow exceptions to CRE 606(b), which states that a juror may testify about "whether extraneous prejudicial information was improperly brought to the jurors' attention."
¶ 59 Johnson asserts that Ranals' stricken statement is "extraneous prejudicial information" that falls under this exception. He relies on People v. Harlan , 109 P.3d 616, and People v. Lahr , 2013 COA 57, 316 P.3d 74, in support of this assertion. His reliance on those decisions is misplaced.
¶ 60 Johnson correctly notes that Harlan and Lahr both state that "any information that is not properly received into evidence ... is extraneous to the case and improper for juror consideration." Lahr , ¶ 24 (alteration omitted) (quoting Harlan , 109 P.3d at 624 ). However, considered in context, this language does not support Johnson's claim.
¶ 61 Lahr did not address CRE 606(b), and thus its use of the word "extraneous" is not persuasive for purposes of interpreting the rule. And, while Harlan addressed the CRE 606(b) exception at issue here, it did not use the above quoted language in the context of improper trial testimony. Rather, this language was directed at the "[e]xposure of a jury to information or influences outside of the trial process itself ." Harlan , 109 P.3d at 629 (emphasis added); accord People v. Wadle , 97 P.3d 932, 935 (Colo. 2004). In Harlan , the extraneous information included a Bible, a Bible index, and notes on biblical passages brought into the jury room. 109 P.3d at 626. Harlan exemplifies the scenario envisioned by the rule, where the jury encounters information for the first time from sources not presented at trial. See Pena-Rodriguez v. People , 2015 CO 31, ¶ 16, 350 P.3d 287 cert. granted , 578 U.S. ----, 136 S.Ct. 1513, 194 L.Ed.2d 602 (2016) (recognizing that CRE 606(b)'s exception for "extraneous prejudicial information" applies, for instance, to a juror's improper investigations into a defendant's case or introduction of evidence from outside the record into the jury room).
¶ 62 The jury in this case was not exposed to information or influences outside of the trial process. Ranals' statement was part of her trial testimony. Thus, it was not extraneous information as contemplated by CRE 606(b). We therefore affirm the trial court's denial of the motion for a new trial.
IV. Conclusion
¶ 63 We vacate Johnson's conviction for witness retaliation under section 18--8-706, but we affirm the judgment of conviction as to his remaining convictions.
Román and Sternberg* , JJ., concur

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2016.

The jury also acquitted Johnson of conspiracy to commit first degree murder, aggravated intimidation of a witness, conspiracy to commit aggravated intimidation of a witness, and conspiracy to commit retaliation against a witness.

The other convictions included two counts of reckless endangerment, two counts of child abuse (no injury), illegal discharge of a weapon, possession of a weapon by a previous offender, criminal mischief, and five counts of habitual criminal.

The supreme court also granted a petition for certiorari on this issue in People v. Maestas , 2015 WL 222407 (Colo. App. No. 11CA2084, Jan. 15, 2015) (not published pursuant to C.A.R. 35(f) ) (cert. granted Oct. 26, 2015).

As originally enacted, section 18-8-706 read: "A person commits retaliation against a witness or victim if he intentionally inflicts harm or injury upon any person or property, which action is directed to or committed upon a witness or victim as retaliation or retribution for giving testimony in any official proceeding." Ch. 122, sec. 4, § 18-8-706, 1984 Colo. Sess. Laws 502.
Among the changes were the removal of the word "intentionally" and the phrase "for giving testimony in any official proceeding," and the addition of the classification of "an individual whom the [defendant] believes has been or would have been called to testify as a witness or victim" and the addition of the phrase "to any crime." Ch. 73, sec. 20, § 18-8-706, 1992 Colo. Sess. Laws 405.

CRE 606(b) further states: "But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jurors' attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying."
For the reasons stated in Part III.B, we disagree that Ranals' statement at trial falls under the "extraneous evidence" exception to CRE 606(b).